IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ROBERT GRIZZLE,<br>Institutional ID No. 1998719<br>SID No. 06338618<br>Prev. TDCJ Nos. 01130107,<br><br>　　　　Plaintiff,<br><br>v.<br><br>RENE ROBLES, *et al.*,<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§　CIVIL ACTION NO. 5:22-CV-132-BQ<br>§<br>§<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION[1]

Before the Court is a motion filed by pro se Plaintiff Robert Grizzle requesting "class certification and the appointment of counsel to represent the class." ECF No. 12. Grizzle also seeks leave to amend his Complaint to include injunctive relief. *Id.* at 1. Because Grizzle has not satisfied the requirements for class certification and has not demonstrated exceptional circumstances justifying the appointment of counsel, the undersigned recommends the United States District Judge **DENY** Grizzle's motions for certification and appointment of counsel. Further, the undersigned recommends that the United States District Judge **DENY** Grizzle's request to amend his Complaint, as Grizzle impermissibly pursues amendment through his motion seeking class certification.

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(A) and the Order of Transfer (ECF No. 7), the undersigned enters this Report and Recommendation.

I. **Background**

A. **Grizzle's Allegations**

In his Complaint, Grizzle raises several distinct claims in this 42 U.S.C. § 1983 action: (1) Sergeant Rene Robles, Officer Clementene Olvera, and Officer Ruben Garcia, all employees at the Texas Department of Criminal Justice (TDCJ) Smith Unit, "took [Grizzle's] property without due process of the law"; (2) Captain Bryson McIntire authorized the unlawful taking; (3) Sgt. Robles, Officer Olvera, Officer Garcia, and Captain McIntire violated his rights under the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act (RLUIPA) when they took his rosary and religious books; and (4) Defendant Bryan Collier, Director of TDCJ, created an unconstitutional policy that violated his First Amendment rights and resulted in the unlawful taking. Compl. 3, 13–14, ECF No. 1.[2]

Regarding the unlawful taking, Grizzle alleges that on September 27, 2021, Sgt. Robles, Officer Garcia, and Officer Olvera took his property. *Id.* at 10. Grizzle acknowledges that some of his property was eventually returned. *Id.* According to Grizzle, however, certain items were never returned, including books, magazines, pictures of women, a religious rosary, and clothing. *Id.* at 11; Questionnaire 1, ECF No. 11.

Grizzle cites different policies as the purported bases of the confiscations. Grizzle avers Sgt. Robles, Officer Garcia, and Officer Olvera seized the pictures of women in accordance with a policy ostensibly enacted August 1, 2021, by Director Collier—Board Policy (BP) 03.91 (Policy).[3] Compl. 12–13; Questionnaire 5. Specifically, Grizzle maintains "[a]fter that [P]olicy

---

[2] Although not entirely clear, Grizzle apparently only seeks class certification on his First Amendment claim against Director Collier. *See* Mot. 1, 7–8, ECF No. 12. The Court therefore primarily focuses its summary of Grizzle's Complaint on his claim against Director Collier.

[3] According to Grizzle, the Policy relates to and purportedly redefines the definition of a sexually explicit image. *See* Compl. 12; Mot. 1.

was enacted officers werent [sic] trained on what exactly was allowed, so they took every picture of women that werent [sic] clearly . . . personal pictures . . . ." Questionnaire 5. Grizzle believes that Sgt. Robles, Officer Garcia, and Officer Olvera took the other items, however, based on rules set forth in the TDCJ offender handbook. Questionnaire 5–7; *see* Compl. 13.

Regardless of the basis for the confiscations, Grizzle asserts that he did not receive adequate due process. Compl. 11, 13; Questionnaire 5, 12. Further, Grizzle alleges that Director Collier's Policy violated his First Amendment rights, and that Sgt. Robles, Officer Garcia, Officer Olvera, and Captain McIntire violated the First Amendment by seizing all of his property. Compl. 13–14; Questionnaire 12–13. Finally, Grizzle contends that Sgt. Robles, Officer Garcia, Officer Olvera, and Captain McIntire's purported taking of his religious materials violated his rights under RFRA and RLUIPA. Compl. 14; Questionnaire 15–16.

As a result of the foregoing violations, Grizzle seeks compensatory, nominal, and punitive damages, as well as a declaratory judgment. Compl. 14–15. Grizzle also asks the Court to award "any such other relief as it may seem he is entitled to." *Id.* at 15.

### B. Grizzle's Motion for Class Certification and Motion to Appoint Counsel

Concerning his First Amendment claim against Director Collier, Grizzle seeks leave to modify his Complaint to include injunctive relief in the form of a change of the Policy. Mot. 1, 4–5. As to his request for class certification, Grizzle posits that the proposed class includes "all past, present, and future inmates confined in TDCJ from July 2021 foward [sic]," along with "any organization, entity, or business that provides for free or for purchase, photographs, books, magazines, other publications, print media or other forms of information to include forms of expression." *Id.* at 2. Grizzle addresses each of the four factors necessary to obtain class certification—numerosity, commonality, typicality, and adequacy—but acknowledges that he

3

cannot satisfy the adequacy requirement. *Id.* at 2–4. He nevertheless asks the Court to appoint class counsel as "a simple remedy" to that issue. *Id.* at 4, 6. Further, Grizzle states that he is seeking certification under either Rule 23(b)(1) or (2). *Id.* at 4–5.

In closing, Grizzle clarifies that although his Complaint includes both a challenge to the purported unlawful taking of his property and the unconstitutionality of the Policy, the class certification relates only to the Policy. *Id.* at 5, 7–8. That is, Grizzle "asks the Court to . . . take not[e] of this new [Policy]," which "prevent[s] the [proposed] class from recieving [sic] even benign publications." *Id.* at 7.

## II.   Legal Standard

Under Rule 23(a), "[o]ne or more members of a class may sue" on behalf of all class members if the following threshold requirements are met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4); *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (quoting Fed. R. Civ. P. 23(a)). These requirements are "commonly known as numerosity, commonality, typicality, and adequacy of representation." *Flecha*, 946 F.3d at 766 (internal quotation marks and citation omitted). In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

"Rule 23 does not set forth a mere pleading standard." *Id.* at 350. To the contrary, the party seeking class certification bears the burden of establishing each requirement under Rule 23.

*Id.* ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."); *Ward v. Hellerstedt*, 753 F. App'x 236, 243 (5th Cir. 2018) (per curiam) ("A party seeking class certification has the burden of establishing that all of Rule 23's requirements are met."). District courts "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017) (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012)).

### III. Discussion

Initially, the undersigned observes that Grizzle's Complaint does not comply with Local Civil Rule 23.1, which requires that "[a] complaint alleging a class action must bear in its title the designation 'COMPLAINT- CLASS ACTION,' and must contain a separate heading entitled 'Class Action Allegations.'" N.D. Tex. Loc. Civ. R. 23.1; *see* ECF No. 1. And even if the Court considered Grizzle's Complaint as one asserting a class action, Grizzle failed to comply with the ninety-day timeframe set forth in Local Civil Rule 23.2. *See* N.D. Tex. Loc. Civ. R. 23.2 ("Within 90 days of filing a class action complaint, . . . an attorney for the plaintiff must move for certification."). Grizzle filed his class certification motion approximately 120 days after filing his Complaint. *See* ECF Nos. 1, 12.

For these reasons alone, the district judge should deny Grizzle's motion. *See, e.g., Payne v. D&D Invs., Inc.*, No. 4:13-cv-690-O, 2014 WL 12531186, at *3 (N.D. Tex. Apr. 7, 2014) (concluding plaintiffs' failure to satisfy Local Civil Rule 23.2's requirements, including filing the motion within ninety days, necessitated denial of the motion for class certification). But even if Grizzle had satisfied the Local Civil Rules' procedural requirements, the district judge should deny his motion for failure to satisfy Fed. R. Civ. P. 23's substantive provisions.

5

A. Rule 23(a) Requirements

*1. Rule 23(a)(1): Numerosity*

"Under Rule 23(a)(1), certification is only appropriate where 'the class is so numerous that joinder of all members is impracticable.'" *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citation omitted). The number of members in the putative class is not determinative. *Id.* (citation omitted). Instead, courts should also evaluate "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.* (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. Unit A July 1981)); *see Phillips v. Joint Legis. Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1022 (5th Cir. Unit A Feb. 1981) ("The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.").

Grizzle maintains that the proposed class is "enormous." Mot. 2. Grizzle believes that "there are over 100,000 inmate[s] incarcerated in TDCJ of which this [Policy] affects," and additionally "there are probably 10,000 plus organizations, entities, and business[es] that provide for free or for sale photos" to inmates. *Id.*

Grizzle's contention, however, is merely speculative. Grizzle provides no evidence demonstrating that *every* TDCJ inmate is impacted by the alleged unlawful Policy—e.g., that they desire to possess materials covered by the rule—let alone that those inmates actually possessed the materials and the alleged contraband was subsequently confiscated. *See id.* Similarly, Grizzle does not offer any support for his contention that there are approximately 10,000 organizations providing inmate publications covered by the Policy. *See id.*

"A mere allegation that the class is too numerous for joinder is insufficient." *Pfeffer v. HSA Retail, Inc.*, No. SA–11–CV–959–XR, 2012 WL 1910034, at *2 (W.D. Tex. May 24, 2012). Grizzle has therefore failed to demonstrate the proposed class is so numerous that joinder would be impracticable. *See, e.g., J.A. ex rel. Alvarez v. Tex. Educ. Agency*, No. 1:19-CV-921-RP, 2020 WL 7258256, at *4 (W.D. Tex. Dec. 9, 2020) (finding plaintiffs had not satisfied the numerosity factor where they merely speculated as to the number of members in the proposed class and "fail[ed] to allege any facts or point to any evidence that joinder would be impracticable in this case"); *Ituah ex rel. McKay v. Austin State Hosp.*, No. A-18-CV-11-RP, 2020 WL 354949, at *5 (W.D. Tex. Jan. 3, 2020) (rejecting plaintiff's contention that she met Rule 23(a)(1), where plaintiff "failed to present evidence that support[ed] her estimate of class size"), *R. & R. adopted by* 2020 WL 343973 (W.D. Tex. Jan. 21, 2020).

2. *Rule 23(a)(2): Commonality*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Commonality is "more than a shared cause of action or common allegation of fact—it requires a common legal contention capable of class-wide resolution." *Flecha*, 946 F.3d at 767. Thus, "the raising of common 'questions'—even in droves—"is not what is important, "but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (citation omitted).

Grizzle contends that "the questions of law and fact are common to probably all the class members in that every inmate of TDCJ [is] subject to having their property taken under" the Policy.

Mot. 3. Grizzle has not, however, provided any information linking the allegedly unlawful Policy to any other putative class member's harm.

In *Dukes*, the Supreme Court held that class certification was inappropriate because the putative class members wanted "to sue about literally millions of employment decisions at once." 564 U.S. at 352. Here too, Grizzle has not put forth any evidence showing TDCJ has acted uniformly in confiscating inmates' materials pursuant to the Policy—e.g., that all class members' pictures were seized because they allegedly violated the Policy, as opposed to a different reason— or that each inmate's rights were violated in a similar way under the First Amendment. Mot. 3. To the contrary, Grizzle alleges that TDCJ employees will not consistently apply the Policy but will instead "arbitrarily" confiscate materials. *See id.* at 7. Thus, there is no common contention among the putative class's claims such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *see, e.g., Ituah*, 2020 WL 354949, at *7 ("Although [plaintiff] asserts her claims and allegations of [defendant's] deficient policies with such broad strokes that appear to give rise to class-wide common issues, her own allegations demonstrate the individualized issues that will arise if a class is certified." (footnote omitted)).

Moreover, Grizzle does not address whether there is a common question of law or fact between the inmates and the publishers he also seeks to include in the class. Mot. 3. Nor has Grizzle argued—and the Court cannot find—that the inmates and publishers "have suffered the same injury." *Ibe*, 836 F.3d at 528. Thus, Grizzle has failed to establish the commonality factor. *See, e.g., Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 129 (N.D. Tex. 2020) (reasoning plaintiff failed to establish commonality requirement where "a class action would not generate common answers to [common] questions" and would "require individualized evidence").

*3. Rule 23(a)(3): Typicality*

"[T]he critical inquiry" as to typicality "is whether the class representative's claims have the same essential characteristics of those of the putative class." *Ward*, 753 F. App'x at 247. This "inquiry is not concerned so much with the 'strengths of the named and unnamed plaintiffs' cases' as with the 'similarity of legal and remedial theories behind their claims.'" *Id.* (quoting *Ibe*, 836 F.3d at 528–29). "Thus, if the claims of the named plaintiffs and putative class members 'arise from a similar course of conduct and share the same legal theory,' typicality will not be defeated by factual differences." *Id.* (citation omitted).

As discussed above, Grizzle has not alleged that TDCJ officials acted uniformly in confiscating inmates' materials. In addition, Grizzle is not seeking the same type of damages as the putative class members. Grizzle argues in his motion that the class members only seek injunctive relief, while he also pursues monetary damages. Mot. 2, 4–5; Compl. 14–15. The Court acknowledges that Grizzle asks to amend his requested relief as to the Policy claim against Director Collier (Mot. 1), but his class certification motion is not the appropriate vehicle to do so.[4]

Grizzle has therefore failed to satisfy the typicality requirement. *See, e.g., Miller v. Grand Canyon Univ., Inc.*, 540 F. Supp. 3d 625, 635 (N.D. Tex. 2021) (determining plaintiff had not satisfied Rule 23(a)(3)'s typicality requirement, where she did "not identif[y] any uniform representation or misrepresentation to the proposed class through which to tie her experience to those that others might have had"); *J.A.*, 2020 WL 7258256, at *5 (finding plaintiffs failed to meet the typicality and adequacy factors where plaintiffs were "not seeking the same type of damages and [would] not face the same statute of limitations defenses"); *Ituah*, 2020 WL 354949, at *8

---

[4] That is, if Grizzle wishes to amend his Complaint, he must file a motion with a complete proposed amended complaint attached as an exhibit. *See* N.D. Tex. Loc. Civ. R. 15.1(a) (providing that a party must attach the proposed amended complaint as an exhibit to a motion to amend); ECF No. 6, at 2 ¶ 5 ("A complete amended complaint shall be attached to any motion to amend."). For this reason, the district judge should deny the request to amend.

("Because [plaintiff] has not demonstrated any facts with respect to any other class member's claim, she cannot show her claims are typical of those of other class members.").

    *4. Rule 23(a)(4): Adequacy of Representation*

"The Rule 23(a) requirements of typicality and adequacy of representation are 'closely related' in that 'demanding typicality on the part of the representative helps ensure his adequacy as a representative.'" *Ward*, 753 F. App'x at 246 (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485 n.27 (5th Cir. 1982)); *see Dukes*, 564 U.S. at 349 n.5. But adequacy "also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, 564 U.S. at 349 n.5 (citation omitted). In sum, the adequacy factor "encompasses class representatives, their counsel, and the relationship between the two." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (citation omitted). This consideration requires the court to not only evaluate "the zeal and competence of the representatives' counsel," but also "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Id.* (alterations and citation omitted).

Grizzle has not demonstrated that he is an adequate class representative. Grizzle, as a pro se prisoner, cannot adequately represent the putative class. *See, e.g., McGrew v. Tex. Bd. of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir. 1995) (per curiam) ("[B]ecause [prisoner] is proceeding pro se and his own complaint failed to state a cause of action, his ability to serve as an adequate representative of the class is dubious."); *Sain v. Collier*, No. H-18-4412, 2019 WL 4144321, at *7 (S.D. Tex. Aug. 30, 2019) ("As pro se litigants, the plaintiffs cannot establish that they can adequately represent the rights of others."); *Powers v. Clay*, No. V–11–051, 2011 WL 6130929, at *3 (S.D. Tex. Dec. 8, 2011) ("[C]ourts have prohibited *pro se* prisoner class actions from proceeding for fear that 'the competence of a layman representing himself [is] clearly too

limited to allow him to risk the rights of others.'" (quoting *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975))). And as explained below, the Court finds Grizzle has not demonstrated exceptional circumstances justifying the appointment of counsel in this § 1983 action.

### B. Rule 23(b) Requirements

Grizzle has also failed to demonstrate that he meets Rule 23(b)'s requirements. Rule 23(b)(1) provides that "[a] class action may be maintained" where

> prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[,] or . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(A)–(B). "[C]ertification under (b)(1)(A) is seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs." *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010). A (b)(1)(B) action, on the other hand, "is usually applied when a 'limited fund' exists, such that non-class members seeking damages would likely deplete the fund and deprive class members of any recovery." *Baker v. Wash. Mut. Fin. Grp., LLC*, 193 F. App'x 294, 297 (5th Cir. 2006) (per curiam).

Under Rule 23(b)(2), the Court may certify a class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[W]hen a proposed class seeks classwide injunctive relief," the class must show that: "(1) the class members . . . have been harmed in essentially the same way . . . and (2) the injunctive relief sought must be specific." *M.D.*, 675 F.3d at 845 (internal quotation marks and

citation omitted). Rule "23(b)(2) requires common behavior by the defendant towards the class." *Casa Orlando*, 624 F.3d at 198.

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (internal quotation marks and citation omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

Grizzle asserts that he wants injunctive relief in the form of "a 'change' of the [Policy]" (Mot. 1), but his original Complaint primarily seeks monetary and declaratory relief.[5] Compl. 14–15. In any event, the precise injunctive relief Grizzle proposes is unclear, and "the injunctive relief sought must be specific." *M.D.*, 675 F.3d at 845 (citation omitted). Moreover, Grizzle does not assert that a limited fund exists.

For these reasons, the undersigned finds that Grizzle has not satisfied his burden of showing that class certification is appropriate under Rule 23(b)(1) or (2). *See, e.g., Casa Orlando*, 624 F.3d at 199 ("Monetary relief predominates unless it is 'incidental' to the requested injunctive or declaratory relief."); *Ituah*, 2020 WL 354949, at *10 (determining plaintiff had not shown certification under Rule 23(b)(2) was appropriate, where she did not define the injunctive relief in "sufficiently specific" terms, nor did she "show that final injunctive relief or declaratory relief is appropriate respecting the class as a whole"); *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 565–66 (N.D. Miss. 2018) (denying certification under Rule 23(b)(1)(A) and (B) where plaintiff "primarily [sought] monetary relief" and did "not contend that a limited fund exists").

---

[5] Even if the Court were to permit Grizzle to amend his Complaint to include injunctive relief as to the claim against Director Collier, Grizzle still seeks nominal damages. Compl. 15; *see* Mot. 5 (stating he is willing to cure barriers to class certification, including "dropping the request for nominal damages" but not expressly requesting such relief).

12

## C. Appointment of Counsel

Grizzle also requests appointment of counsel through his motion. Mot. 6. "A civil rights complainant has no right to the automatic appointment of counsel," and appointment of counsel is warranted only in exceptional circumstances. *Akasike v. Fitzpatrick*, 26 F.3d 510, 512 (5th Cir. 1994) (per curiam). Although 28 U.S.C. § 1915(e)(1) provides that courts may ask an attorney to represent a litigant proceeding *in forma pauperis*, courts are not empowered to make compulsory appointments in civil actions. *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 301–02 (1989).

In determining whether to appoint counsel in a civil rights case, the court may base its decision on several factors, including:

1. the type and complexity of the case;

2. the petitioner's ability to adequately present and investigate his case;

3. the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and

4. the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination."

*Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992).

The Court notes initially that Grizzle's request for counsel is premised on class certification.[6] *See* Mot. 4 (acknowledging that he cannot satisfy the adequacy factor as a pro se prisoner-plaintiff but arguing that the Court should appoint counsel to remedy the deficiency), 6

---

[6] To the extent Grizzle seeks appointment of counsel under Rule 23(g) (*see* Mot. 4), his request is misplaced. *See, e.g., Sain*, 2019 WL 4144321, at *7 ("[T]he purpose of Rule 23(g) is not to enable pro se plaintiffs to obtain [appointed] counsel in conjunction with class certification; the purpose of the rule is to ensure that the proposed class counsel is adequate." (emphasis omitted) (quoting *Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015))).

13

(addressing the appointment-of-counsel factors within the class action context). Because the undersigned has recommended denial of class certification, the district judge should also deny appointment of counsel to represent the putative class. *See, e.g., Kennemer v. Collier*, No. 3:19-0335, 2020 WL 639728, at *3 (S.D. Tex. Feb. 11, 2020) ("Because the court has denied class certification, the motion for appointment of counsel also is denied."); *Harrison v. U.S. Marshal Serv.*, No. 3:11–CV–0333–K–BH, 2011 WL 1320485, at *2 (N.D. Tex. Mar. 3, 2011) (recommending denial of motion to appoint counsel where court also recommended denial of class certification), *R. & R. adopted by* 2011 WL 1320481 (N.D. Tex. Apr. 6, 2011).

Moreover, Grizzle's motion is premature. *See* PLRA Filing Fee Order, at 2 ¶ 7, ECF No. 6 (instructing Plaintiff that "[n]o motions for appointment of counsel shall be filed until the Court has completed its screening pursuant to 28 U.S.C. § 1915(e)(2)"); *cf. McGrew*, 47 F.3d at 162 (expressing doubt that prisoner could adequately represent putative class in proposed amended complaint, where prisoner had not stated a claim in his original complaint); *Joyce v. Texas*, No. 1:20-CV-145-H-BU, 2022 WL 325746, at *2–3 (N.D. Tex. Feb. 3, 2022) (denying plaintiff's motion for class certification in part because the magistrate judge had not yet completed judicial screening under § 1915).

In addition, Plaintiff's motion does not present sufficient justification for the appointment of counsel as to his case generally. The circumstances and nature of this action—including due process and violations of his religious rights—are not particularly complex or unique. "The section 1983 action that [Plaintiff] has filed involves issues that have been briefed and analyzed in numerous cases." *Jackson v. Dall. Police Dep't*, 811 F.2d 260, 262 (5th Cir. 1986) (per curiam); *see, e.g., Coomer v. Roth*, No. 21-10182, 2022 WL 73045, at *2 (5th Cir. Jan. 7, 2022) (discussing due process claim in context of property deprivation where prisoner alleged the confiscation was

not random and unauthorized); *Adkins v. Kaspar*, 393 F.3d 559, 563–71 (5th Cir. 2004) (reviewing standards for First Amendment and RLUIPA religious rights claims). Counsel need only be appointed in exceptional civil rights cases—this is not one. *See, e.g.*, *McAlister v. Livingston*, 348 F. App'x 923, 941–42 (5th Cir. 2009) (per curiam) (rejecting prisoner's allegation that his RLUIPA claim was so complex such that counsel was necessary, particularly where record showed prisoner had "sufficiently investigated his case, and his presentation of his claims and the relevant legal issues to both the district court and to [the Fifth Circuit] for review ha[d] been adequate"); *Samford v. Staples*, 249 F. App'x 1001, 1004 (5th Cir. 2007) (per curiam) (affirming district court's denial of prisoner's request for counsel where prisoner alleged, *inter alia*, that defendants took his property in violation of the Due Process Clause).

Moreover, as demonstrated by the pleadings filed by Grizzle, the Court concludes he is able to adequately develop and present his case in future proceedings. Finally, at this point, the Court cannot determine whether the evidence will largely consist of conflicting testimony or whether the appointment of counsel would shorten any potential trial. Should the case proceed to trial, the Court may—on its own motion—reconsider whether the circumstances warrant appointment of counsel at that time.

In sum, Grizzle has not shown any inability to set forth his claims for relief, nor has he shown that extraordinary circumstances are involved that would justify the appointment of counsel at this stage of the case. Accordingly, the undersigned recommends the district judge deny without prejudice Grizzle's motion to appoint counsel.

## IV. Recommendation

For the reasons set forth above, the undersigned recommends that the United States District Judge deny Grizzle's motions for class certification and for the appointment of counsel. The

undersigned further recommends that, to the extent Grizzle seeks to amend his Complaint to include a request for injunctive relief, the United States District Judge deny the request as improperly sought through the class certification motion.

## V. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December 29, 2022.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE