IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

ROBERT GRIZZLE,                          §
Institutional ID No. 1998719             §
SID No. 06338618                         §
Prev. TDCJ Nos. 01130107,                §
                                         §
        Plaintiff,                       §
                                         §    CIVIL ACTION NO. 5:22-CV-132-BQ
v.                                       §
                                         §
RENE ROBLES, *et al.*,                   §
                                         §
        Defendants.                      §

**REPORT AND RECOMMENDATION**

Proceeding pro se and *in forma pauperis*, Plaintiff Robert Grizzle filed this action under

42 U.S.C. § 1983, claiming violations of his constitutional rights during his incarceration at the

Texas Department of Criminal Justice (TDCJ) Preston Smith Unit (Smith Unit). Compl. 3, 10,

ECF No. 1. The United States District Judge transferred this case to the undersigned United States

Magistrate Judge for further proceedings. ECF Nos. 1, 7. The undersigned thereafter reviewed

Grizzle's Complaint, as well as authenticated records from TDCJ, and ordered Grizzle to complete

a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). ECF No. 10.

Grizzle timely completed and returned the questionnaire. ECF No. 11.

Not all parties have consented to proceed before the undersigned magistrate judge. In

accordance with the order of transfer, the undersigned makes the following Report and

recommends that the district judge order the filing of an answer or other pleading as to the

following claims against Defendants Rene Robles, Clementene Olvera, Ruben Garcia, and Bryson

McIntire: (1) alleged violations of the First Amendment based on their purported confiscation of

Grizzle's pictures of women and magazines; and (2) a purported procedural due process violation

arising from their confiscation of the pictures and magazines.    Further, the undersigned recommends that the district judge dismiss with prejudice all other claims asserted by Grizzle in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), excepting Grizzle's claims for a declaratory judgment, which should be dismissed without prejudice.

## I.    Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).    A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.    *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).    A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories.    *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam).    When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records.    *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

2

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A.  Grizzle's Allegations

Grizzle asserts claims against the following Defendants, all TDCJ employees:  (1) Sergeant Rene Robles; (2) Correctional Officer (CO) Clementene Olvera; (3) CO Ruben Garcia; (4) Captain Bryson McIntire; and (5) TDCJ Director Bryan Collier.  Compl. 1, 3.  Grizzle sues all Defendants in their individual and official capacities.  Questionnaire 17, ECF No. 11.

Grizzle alleges that on September 27, 2021, officers at the TDCJ Smith Unit used force to remove him from his cell, separating him from his property.[1]  Compl. 10.  He was then transferred to the Montford Unit for several days.  *See* Questionnaire 8.  Grizzle contends that after returning to the Smith Unit, an officer gave back some, but not all, of his property on October 13.  Compl. 10; *see* Questionnaire 10.  Grizzle asserts that he did not receive the following items:  (1) between twenty-five and thirty-five books, including a "Catholic Bible" and "literature on the Virgin Mary and Catholicism"; (2) approximately twenty magazines; (3) 120 pictures of women; (4) a religious rosary; and (5) shoes, shirts, and shorts.  Questionnaire 1–3; Compl. 10–11, 14.  Grizzle's supporting allegations concerning the missing property, however, conflict.

---

[1] Grizzle's use-of-force allegation forms the basis of another lawsuit before this Court in case number 5:22-cv-017-H. Questionnaire 1.  He does not raise a use of force claim in this action.

In his Complaint, Grizzle initially avers that prior to the use of force, Defendant McIntire told Grizzle that he would have Defendants Robles, Olvera, and Garcia "take most of [Grizzle's] property and throw it away if" Grizzle "persisted in refusing to come out of the cell." Compl. 10. "Defendant McIntire then [allegedly] told Defendant Robles . . . [to] 'f\*\*\* over [Grizzle's] property when y'all pack it up.'" *Id.* Grizzle also contends, however, that Defendants' purported confiscation was neither "random" nor "unauthorized"—it was instead "pursuant to a state policy." *Id.* at 11. In a seemingly third explanation for the alleged confiscation, Grizzle states in his questionnaire responses that, as to his books, clothing, and shoes, Defendants "are lazy," so after the use of force "they allowed an[other] inmate to pack [Grizzle's] property" and permitted him to "take what he wanted to take," and "when [Grizzle] got [his] property" back the items the inmate had taken were gone. Questionnaire 8; *see id.* at 6; *see also* Compl. 11 (alleging that Defendants "gave [his] property to their favored inmates that live on the same building which [Grizzle] later found out"). According to Grizzle, Defendants merely told Grizzle that this property "violated a policy . . . thinking that all inmates are stupid and will accept [their explanation] at that." Questionnaire 8.

As to the magazines and pictures of women, Grizzle separately contends that Defendants took them because the images allegedly violated a policy recently enacted by Defendant Collier. Compl. 11, 13. Grizzle believes that Defendants confiscated the photos pursuant to TDCJ Board Policy (BP) 03.91 (the Policy), which was revised June 25 and became effective August 1, 2021.[2] Questionnaire 5; *see* Compl. 11–12. Grizzle concedes that some of the pictures violated the Policy but argues that "lots of them didn't." Questionnaire 5. Grizzle alleges that Defendant Collier's Policy abrogates his rights under the First Amendment. Compl. 13.

---

[2] Grizzle states that the Policy has been unofficially repealed. Compl. 13.

Regardless of the explanation for the purported takings, Grizzle contends that Defendants McIntire, Robles, Olvera, and Garcia denied him adequate due process before confiscating the items. *See id.* at 11–14; Questionnaire 12. Specifically, Grizzle maintains that he did not receive "notification of the" confiscation, had "no way to contest" it, and "no ability to appeal the decision" or "send the items home." Questionnaire 12. Grizzle also avers that he filed grievances related to the confiscation of this property, but the grievances went unanswered. Compl. 11.

In addition, Grizzle alleges that Defendants McIntire, Robles, Olvera, and Garcia's purported taking of his religious books and rosary violated his First Amendment rights as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Religious Freedom Restoration Act of 1993 (RFRA). *Id.* at 14. Moreover, Grizzle contends Defendants breached his First Amendment rights when they took his books, magazines, and photos. *Id.*

Grizzle seeks monetary damages. *Id.* at 14–15. He also asks the Court to issue a declaration that (1) "Defendants Robles, Olvera, Garcia, and McIntire violated his 1st Amendment and due process . . . constitutional rights," as well as "his RFRA/RLUIPA rights," and (2) "Defendant Collier violated [Grizzle's] 1st Amendment rights." *Id.* at 14 (cleaned up).

**B. Grizzle lacks standing to pursue retrospective declaratory relief.**

To obtain declaratory relief, a plaintiff must demonstrate that he is "likely to suffer *future* injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (emphasis added); *see Serafine v. Crump*, 800 F. App'x 234, 236 (5th Cir. 2020) (per curiam) (observing that although *Lyons* addressed injunctive relief, its "reasoning applies equally to declaratory relief"). Where the declaratory relief is premised on past acts, a plaintiff must establish "either continuing harm or a real and immediate threat of repeated injury in the future." *Soc'y of Separationists, Inc. v. Herman*,

959 F.2d 1283, 1285 (5th Cir. 1992). "The threat of future injury must be 'certainly impending'; mere '[a]llegations of *possible* future injury' do not suffice." *Adams v. Pearl River Valley Water Supply Dist.*, No. 21-60749, 2022 WL 2829756, at \*3 (5th Cir. July 20, 2022) (unpublished) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Grizzle's requests for declaratory relief are retrospective in that he asks the Court to remedy past events—the alleged taking of his property. *See* Compl. 14. Indeed, Grizzle wants the Court to declare "Defendant[s] Robles, Olvera, Garcia, and McIntire *violated*" his constitutional rights, as well as his rights under RFRA/RLUIPA. *Id.* (emphasis added). Similarly, Grizzle asks the Court to declare that "Defendant Collier *violated* [Grizzle's] 1st Amendment rights." *Id.* (emphasis added). Grizzle's requests, and the factual allegations supporting them, are premised on past events and are therefore retrospective. Thus, Grizzle has standing only if he has pleaded facts showing a continuing harm or immediate threat of repeated harm. *Herman*, 959 F.2d at 1285. The Court concludes he has not.

Grizzle asserts no facts indicating that Defendants Robles, Olvera, Garcia, and McIntire will again confiscate his clothing, books, or religious materials. *See* Compl. 10–15. As to the pictures and magazines, Grizzle states that the Policy has been unofficially repealed. *Id.* at 13. Thus, any allegation that Defendants will continue to seize his pictures of women and magazines in accordance with the Policy is speculative at best. *See id.* at 12–13. Because Grizzle only seeks retrospective declaratory relief, the undersigned recommends that the district judge dismiss without prejudice those claims for lack of standing.[3] *See, e.g.*, *Waller v. Hanlon*, 922 F.3d 590,

---

[3] Grizzle references the Fourth and Eleventh Amendments in connection with his request for declaratory relief. Compl. 14. Based on the substance of Grizzle's allegations, the Court does not construe Grizzle's claims as arising under those constitutional provisions. *See, e.g.*, *United States v. Santora*, 711 F.2d 41, 42 n.1 (5th Cir. 1983) (noting that courts must consider the essence of a pro se prisoner's claims rather than the label attached). But even if Grizzle intended to assert a Fourth Amendment claim based on Defendants' alleged confiscation of property, it would fail. *See Rickerson v. Rust*, No. 5:17cv172, 2019 WL 8500865, at \*9 (E.D. Tex. Nov. 13, 2019) (dismissing prisoner's claim that seizure of legal papers violated his Fourth Amendment rights because prisoners have no expectation of

603–04 (5th Cir. 2019) (reversing "district court's order declining to dismiss the plaintiffs' claims for declaratory relief," which were based on past injury); *Malik v. U.S. Dep't of Homeland Sec.*, No. 4:21-cv-0088-P, 2022 WL 3104840, at *2–3 (N.D. Tex. Aug. 4, 2022) (dismissing plaintiff's claims for declaratory relief, which were based on past wrongs and alleged only speculative future harm); *Henry v. Adeyemi*, No. G–09–46, 2012 WL 163820, at *2 (S.D. Tex. Jan. 19, 2012) (concluding prisoner's claims for declaratory judgment that defendant violated his civil rights by allegedly throwing urine on him were based on past wrong and prisoner therefore lacked standing).

### C. Grizzle cannot recover compensatory damages against Defendants in their individual capacities for his § 1983 claims because he fails to allege a physical injury.

Under the Prison Litigation Reform Act (PLRA), "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Fifth Circuit has held that this requirement "applies to all federal civil actions in which a prisoner alleges a constitutional violation." *Geiger*, 404 F.3d at 375; *see Mayfield v. Tex. Dep't of Crim. Just.*, 529

---

privacy in their cell), *R. & R. adopted by* 2020 WL 633582 (E.D. Tex. Feb. 11, 2020), *aff'd*, No. 20-40208, 2021 WL 5871885 (5th Cir. 2021).

The Supreme Court has expressly held that "the Fourth Amendment proscription against unreasonable searches *does not apply within the confines of the prison cell*." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (emphasis added). In *Hudson*, the Supreme Court reasoned that "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. . . . Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained." *Id.* at 526–27. These legitimate security concerns justify such searches, which are "a matter lodged in the sound discretion of the institutional officials." *Block v. Rutherford*, 468 U.S. 576, 591 (1984). Similarly, "the Fourth Amendment's proscription of unreasonable seizures does not apply to prison officers who are seizing items from the cells of prisoners." *Kuykendall v. Collins*, No. 92-1868, 1993 WL 210350, at *2 (5th Cir. June 10, 1993) (unpublished); *see Hudson*, 468 U.S. at 528 n.8 (explaining that the Fourth Amendment does not apply to prison officials' seizure of prisoner's property because officials must be "free to seize from cells any articles which, in their view, disserve legitimate institutional interests"); *Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (per curiam) (reasoning that "because an inmate does not have an expectation of privacy in his cell, [plaintiff] [wa]s unable to make a claim of unreasonable search and seizure under the Fourth Amendment"); *Tanksly v. Castro*, No. 01-11369, 2002 WL 753486, at *1 (5th Cir. Apr. 8, 2002) (unpublished) (affirming dismissal as frivolous prisoner's Fourth Amendment search and seizure claim).

As for Grizzle's reference to the Eleventh Amendment, the Court addresses it in Section II.D herein.

F.3d 599, 603, 605–06 (5th Cir. 2008) (affirming district court's grant of summary judgment in favor of defendants, where prisoner only sought compensatory damages and did not allege any physical injury regarding his claim that defendants violated his First Amendment right to freely exercise his religion). The application of § 1997e(e) is based on "the relief sought, and not the underlying substantive violation." *Geiger*, 404 F.3d at 375; *see Mayfield*, 529 F.3d at 605 ("We have held that the application of [§ 1997e(e)] . . . turns on the relief sought by a prisoner, and that it prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged.").

Grizzle does not aver that Defendants' alleged constitutional violations caused him physical injury. *See* Compl. 10–15; Questionnaire 12–16. Thus, any claim for compensatory damages based on the alleged constitutional violations is not viable, and the undersigned recommends the district judge dismiss same. *See, e.g., Carter v. Hubert*, 452 F. App'x 477, 479 (5th Cir. 2011) (per curiam) (affirming district court's grant of summary judgment on prisoner's "First Amendment claim that the defendants denied him the right to freely exercise his religion by confiscating his Bible and other religious pamphlets because he [did] not allege that he suffered a physical injury that was more than de minimis"); *Hill v. Fagan*, No. 1:16-CV-185-BL, 2018 WL 3244617, at *3 (N.D. Tex. June 4, 2018) (recommending dismissal of prisoner's claim for compensatory damages against defendant, where prisoner failed to allege a physical injury arising from the purported due process violation), *R. & R. adopted by* 2018 WL 3242274 (N.D. Tex. July 3, 2018).

In sum, the only remaining claims for relief asserted by Grizzle are those for nominal and punitive damages. *See* Compl. 15.

**D. Grizzle cannot maintain § 1983 claims against Defendants in their official capacities.**

Grizzle sues Defendants Robles, Olvera, Garcia, McIntire, and Collier in their official capacities for money damages. Questionnaire 17; Compl. 14–15. These claims are simply another way of suing TDCJ, and therefore the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in their official capacities cannot succeed under § 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). Moreover, state officials acting in their official capacities are not "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Thus, the district judge should dismiss any § 1983 claim against Defendants in their official capacities.

**E. Grizzle's First Amendment claims related to BP 03.91 and Defendants' alleged confiscation of magazines and pictures of women.**

Grizzle alleges that Defendants Robles, Olvera, and Garcia—at the direction of Defendant McIntire—confiscated from his cell twenty magazines and approximately 120 pictures of women. *See* Am. Compl. 10–14; Questionnaire 1, 3–4. The subjects of the photos, Grizzle contends, included "beautiful women fully dressed," celebrities, "swimsuit models," lingerie models, women "showing their tattoos," and "alot [sic] of . . . women showing their feet." Questionnaire 4. Grizzle purportedly obtained the photos from "a free world person and a publisher." *Id.* The titles of the confiscated magazines included "Phat Puffs," "Sports Illustrated," and "Show."[4] *Id.* at 1.

---

[4] Although he does not specify, the Court understands Grizzle as contending the magazines were confiscated under the Policy. *See* Compl. 13 (positing that most magazines violate the Policy because they "contain women in lingerie" and alleging the Policy resulted in Grizzle's "publications and photographs" being taken).

Grizzle contends Defendants seized the photos and magazines pursuant to BP 03.91, which Defendant Collier enacted. Compl. 11–12; Questionnaire 5. That Policy, Grizzle argues, violates the First Amendment and resulted in his constitutional harm. Compl. 11–12; Questionnaire 13.

Grizzle does not specify whether he is asserting a facial or as-applied challenge to the Policy. Based on his allegations, however, the Court understands Grizzle as raising a facial objection to the Policy as to Defendant Collier and an as-applied challenge against Defendants McIntire, Robles, Olvera, and Garcia.[5]

*1. The Policy*

BP 03.91 sets forth TDCJ's inmate correspondence rules. *See* TEX. DEP'T OF CRIM. JUST., *Board Policy*, https://www.tdcj.texas.gov/documents/policy/BP0391.pdf. The Policy, which was revised June 25 and became effective August 1, 2021, defines a "Sexually Explicit Image" as:

> material in publications, photographs, drawings, or any type of image, which depicts sexual behavior, is intended to cause sexual excitement or arousal, or shows: frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks of either gender; the discharge of bodily fluids in the context of sexual activity; or sexual behavior from any vantage point. The chests of infants and pre-pubescent children are not considered breasts, unless further restricted by a treatment program policy.

*Id.* at 3. The Policy sets out the procedures for TDCJ staff to process incoming and outgoing correspondence, specifies what happens to rejected correspondence, and provides a review process by which inmates can appeal the rejection. *Id.* at 4–15.

The Court construes Grizzle's claim as challenging the definition of a sexually explicit image as including any material "intended to cause sexual excitement or arousal." *See* Compl. 11–12. Grizzle apparently does not contend that Defendants confiscated his photos and magazines

---

[5] The Court reaches this conclusion in part because Grizzle makes no allegation that Defendant Collier was personally involved in the alleged confiscation. *See* Compl. 10–13.

during the mailing process, but instead that they retroactively applied BP 03.91 to materials Grizzle already possessed. *See id.* at 10–14.

    *2. First Amendment*

    Although prisoners do not lose all constitutional protection as a result of their confinement, their rights, including those under the First Amendment, are necessarily more limited in scope than those in the free world. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (maintaining "that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large"); *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (referencing "the familiar proposition that [l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system" (internal quotation marks and citation omitted)). "In the First Amendment context," a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822.

    "Whether a prison regulation impermissibly encroaches upon a prisoner's First Amendment rights depends upon whether it is 'reasonably related to legitimate penological interests.'" *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017) (quoting *Mayfield*, 529 F.3d at 607). Courts should consider the four factors identified by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987) in determining the reasonableness of a prison regulation that allegedly impinges on a prisoner's constitutional rights:

> (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison

resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question.

*Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (quoting *Turner*, 482 U.S. at 89–90). The Fifth Circuit has held that *Turner*'s first factor—rationality—is the controlling question, while the remaining factors merely help a court determine whether the connection between the prison regulation and the governmental interest is logical. *See Prison Legal News v. Livingston*, 683 F.3d 201, 214–15 (5th Cir. 2012); *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir. 1992). "The inmate has the burden of demonstrating that there is no rational relation to a legitimate penological interest." *Keys v. Torres*, 737 F. App'x 717, 719 (5th Cir. 2018) (per curiam).

"The Supreme Court has also instructed that it is 'important to inquire whether prison regulations restricting inmates' First Amendment rights operate[] in a neutral fashion.'" *Prison Legal News*, 683 F.3d at 215 (quoting *Thornbaugh v. Abbott*, 490 U.S. 401, 415 (1989)). That is, "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Id.* (quoting *Thornbaugh*, 490 U.S. at 415). "Prison regulations that 'draw distinctions between publications solely on the basis of their potential implications for prison security' are facially neutral in the relevant sense." *Id.* (quoting *Thornbaugh*, 490 U.S. at 415–16).

*3. Grizzle's allegation that BP 03.91 is unconstitutional on its face is without merit.*

Grizzle contends that the Policy, purportedly promulgated by Defendant Collier, violated Grizzle's "First Amendment rights by denying publications solely because the publication's content is sexual, which [in turn] caused [Grizzle's] publications and photographs to be taken." Compl. 13. In Grizzle's view, the amended Policy altered or broadened the definition of sexually explicit material. *See id.* at 12.

The Fifth Circuit has expressly held that the Policy "was promulgated to promote prison safety and security," which unquestionably constitutes a valid penological interest.[6] *Keys*, 737 F. App'x at 719; *see Stroble v. Livingston*, 538 F. App'x 479, 480 (5th Cir. 2013) (per curiam) ("To further the legitimate interest in preventing deviate, criminal sexual behavior in the prison population, prison officials may limit prisoners' access to sexually explicit materials even if they are not obscene."); *see also Prison Legal News*, 683 F.3d at 207 (considering only an as-applied challenge to a former version of the Policy because the parties agreed the Policy was "facially constitutional"). The Fifth Circuit has further concluded the Policy is "facially neutral" because it distinguishes "between publications based on potential implications for prison security, which are unrelated to the suppression of expression." *Keys*, 737 F. App'x at 719. Indeed, the Policy "provides that a publication may be rejected due to content if it includes . . . sexually explicit images" but does not otherwise differentiate between publications or materials received by inmates. *Id.*

Because the amended Policy specifically defines "sexually explicit" images and distinguishes "between publications solely on the basis of their potential implications for prison security," and Grizzle pleads no facts demonstrating otherwise, the Court finds the Policy is constitutional on its face. *Prison Legal News*, 683 F.3d at 215; *see, e.g.*, *Keys*, 737 F. App'x at 719 ("Policy 03.91 is facially constitutional."); *Thompson v. Lumpkin*, No. 2:21-CV-00154, 2022 WL 4110926, at *8 (S.D. Tex. July 6, 2022) (rejecting prisoner's First Amendment challenge to amended BP 03.91 because his allegation that the definition of a sexually explicit image "[w]as overbroad [was] insufficient to show that the [P]olicy is not rationally related to legitimate

---

[6] The *Keys* court reviewed a prior version of the Policy and in relation to its prohibition on content discussing the manufacture of weapons. *See* 737 F. App'x at 718–19 & n.2. The Court finds this fact of no import as it relates to the conclusion that the Policy is intended to promote safety and security, particularly where Grizzle only alleges that the amended Policy altered the definition of sexually explicit material. *See* Compl. 12.

penological goals such as maintaining discipline and preventing inappropriate sexual behavior among inmates"), *R. & R. adopted by* 2022 WL 4110160 (S.D. Tex. Sept. 7, 2022); *McCullough v. O'Daniel*, No. 2:21-CV-00176, 2022 WL 3219802, at *7 (S.D. Tex. July 6, 2022) (concluding prisoner's "First Amendment claim challenging amended BP-03.91" was "foreclosed by Fifth Circuit precedent" where prisoner's allegations failed to show the Policy was "not rationally related to legitimate penological goals"), *R. & R. adopted by* 2022 WL 3212933 (S.D. Tex. Aug. 8, 2022); *Ibenyenwa v. Tex. Bd. of Crim. Just.*, No. 9:19cv1, 2022 WL 2815313, at *3 (E.D. Tex. Mar. 31, 2022) ("Plaintiff's disagreement with the prison's definition or determination of what is sexually explicit material [in the amended Policy] is insufficient to establish that the regulation is not rationally related to a legitimate penological goal, including the protection of female guards and prevention of inappropriate sexual behavior among inmates."), *R. & R. adopted by* 2022 WL 2813720 (E.D. Tex. July 18, 2022).  The undersigned therefore recommends that the district judge dismiss Grizzle's First Amendment claim against Defendant Collier.

> 4. *Grizzle's contention that Defendants Robles, Olvera, Garcia, and McIntire confiscated his pictures and magazines in violation of his First Amendment rights survives screening.*

Grizzle asserts that Defendants Robles, Olvera, and Garcia confiscated, at Defendant McIntire's direction, magazines and pictures of women because they purportedly violated the Policy. *See* Compl. 10–12, 14; Questionnaire 3–4.  Grizzle concedes that "some of those pictures violated th[e] [P]olicy but lots of them didn't."  Questionnaire 5.  According to Grizzle, the appropriated pictures included "beautiful women fully dressed," "celebrity photos," and some women "showing their tattoos . . . and feet."  *Id.* at 4; *see* Compl. 12 (contending "not every picture is specifically intended to cause sexual arousal, some are just glamour shots of Famous beautiful women").  Because the Policy broadly defines a sexually explicit image to include any material

intended to cause sexual arousal, Grizzle alleges TDCJ officials misapplied the policy by "tak[ing] all pictures of women if they are not clearly free world family pictures." Compl. 12 (emphasis omitted); *see* Questionnaire 12. Essentially, Grizzle contends that Defendants confiscated his pictures and magazines in their entirety simply because they contained images of women, even those not intended to cause sexual arousal. *See* Compl. 12; Questionnaire 5.[7]

Accepting Grizzle's allegations as true, as the Court must at this stage, the undersigned finds he has pleaded sufficient facts regarding his claim to survive preliminary screening. *See, e.g.*, *Martinez v. Members of the Tex. Bd. of Crim. Just.*, No. 3:21-cv-337, ECF No. 24 (S.D. Tex. Aug. 9, 2022) (ordering defendants to answer on prisoner's allegation that defendants violated, *inter alia*, his First Amendment rights by enforcing BP 03.91); *see also Shakur v. Selsky*, 391 F.3d 106, 117–18 (2d Cir. 2004) (reversing district court's dismissal at screening of prisoner's First Amendment claim, where prisoner alleged censorship of materials was not authorized under prison's own rules).

### F. Grizzle has not pleaded sufficient facts to survive screening based on his First Amendment claim that Defendants confiscated and did not return his books.

Grizzle contends that Defendants confiscated his books (about 25–35 in total) in violation of his First Amendment rights. Compl. 14; Questionnaire 2. Other than religious books, which the Court separately discusses in Section II.H below, Grizzle does not specify the titles or content of the books Defendants allegedly took.[8] *See* Compl. 13–14; Questionnaire 2. Grizzle disputes Defendants' purported basis for seizing the books (i.e., that they lacked Grizzle's name and identification number) and contends Defendants permitted another inmate to take his books

---

[7] Grizzle also makes the stray assertion that Defendants seized all of his photos and magazines, thereby denying him "freedom of press." *Id.* at 13.

[8] The Court liberally construes Grizzle's pleadings as raising both a First Amendment claim based on the restriction of information/publications as well as a Free Exercise Clause violation. *See* Compl. 14; Questionnaire 13–14.

because Defendants "are lazy." Questionnaire 2, 8 ("[T]hey allowed an inmate to pack my property, take what he wanted to take, then when I got my property all these items were missing.").

To state a viable § 1983 claim, a plaintiff must demonstrate that the defendant acted under color of state law when depriving him of a constitutional right. *See* 42 U.S.C. § 1983; *West v. Adkins*, 487 U.S. 42, 48 (1988). In certain circumstances, a private party's conduct may constitute state action, including when: (1) the party performs a function traditionally within the exclusive province of the state; (2) the state exercised coercive power over the party such that conduct is deemed that of the state; or (3) the party conspired with a state actor. *See Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003). Because Grizzle does not contend Defendants took his books, and he has not alleged facts demonstrating the inmate was acting under color of state law when he misappropriated the books, the undersigned recommends that the district judge should dismiss his claim.[9]

But even if the deprivation constituted a state action, Grizzle does not assert that (1) he was prohibited from possessing all books, (2) that Defendants seized the books because of their content, or (3) that he could not access books through the prison library.[10] Instead, Grizzle's allegation is that Defendants improperly took the books based on a dispute over ownership. *See* Questionnaire

---

[9] Authenticated records suggest that some confiscated books were eventually destroyed due to questions over ownership. When asked about this development Grizzle expressed ignorance. Questionnaire 11. Even assuming TDCJ eventually exercised control over some of the missing books and destroyed them, Grizzle nevertheless fails to state a claim for the reasons set forth in the main text at page 17 *infra*. Moreover, even accepting this occurrence as true, Grizzle at best has a state law claim for conversion, which is not actionable under § 1983. *See infra* Section II.G.1; *Hall v. Taylor*, No. 11–21–GPM, 2011 WL 499974, at *3 n.3 (S.D. Ill. Feb. 5, 2011) (concluding prisoner failed to state a First Amendment claim based on defendant's purported confiscation of a magazine, where prison policy did not prohibit the content of the magazine and defendant's purported confiscation was therefore a random and unauthorized taking for which he could obtain relief under state law).

[10] Indeed, Grizzle acknowledges that officials returned at least seven non-religious books to him as of October 13, 2021, approximately two weeks after the alleged seizure. *See* Questionnaire 10–11. To the extent Defendants only temporarily confiscated Grizzle's non-religious books, he similarly fails to state a claim. *See Hadley v. Wallace*, No. 4:09CV92–P–D, 2010 WL 2539577, at *1 (N.D. Miss. Jan. 19, 2010) (determining prisoner's First Amendment claim based on temporary (and isolated instance of) delay was not viable), *R. & R. adopted by* 2010 WL 2539842 (N.D. Miss. June 15, 2010).

2, 7–8. The undersigned therefore finds Grizzle has failed to state a First Amendment claim related to Defendants' confiscation of his books. *See, e.g.*, *Edwards v. Martin*, No. 2:15-CV-0306, 2015 WL 13735747, at *4 (N.D. Tex. Oct. 28, 2015) (concluding prisoner failed to state a First Amendment claim based on Defendants' seizure of his magazines, where prisoner did "not allege his magazines were confiscated because of their content, but because of doubts about ownership"), *R. & R. adopted by* 2015 WL 7776566 (N.D. Tex. Dec. 2, 2015), *aff'd*, 688 F. App'x 292 (5th Cir. 2017); *cf. Turner*, 482 U.S. at 90 ("Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." (internal quotation marks and citations omitted)); *Marron v. Miller*, No. 7:13CV00338, 2014 WL 2879745, at *3 (W.D. Va. June 24, 2014) (granting defendants' motion to dismiss on prisoner's First Amendment religious rights claim because prisoner had, *inter alia*, failed to allege defendants prohibited him from possessing religious books that did not violate the contraband policy).

### G. Grizzle's procedural due process claim concerning the alleged confiscation of his pictures and magazines survives screening, but the claim based on seizure of his other property does not.

Grizzle alleges that Defendants Robles, Olvera, and Garcia—at Defendant McIntire's direction—confiscated all of his property in violation of his due process rights. Compl. 13. Generally, an official's random, unauthorized actions—whether negligent or intentional—that result in a loss of property constitute a state tort action rather than a federal due process claim, unless the state fails to provide an adequate post-deprivation remedy. *See Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon v. Burch*, 494 U.S. 113, 115 (1990)); *Carmona*

*v. Branstuder*, No. 95-30190, 1995 WL 581807, at *1 (5th Cir. 1995) (unpublished). This principle is known as the *Parratt/Hudson* doctrine.[11] *Allen*, 388 F.3d at 149.

Where the conduct is not "random and unauthorized," however, the rule does not apply, and an inmate may assert a cognizable procedural due process claim. *See id.* "Conduct is not 'random and unauthorized' for purposes of the *Parratt/Hudson* doctrine if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'" *Id.* (quoting *Zinermon*, 494 U.S. at 138).

Courts apply the *Parratt/Hudson* doctrine where the following three prerequisites are satisfied: (1) the deprivation must be unpredictable or unforeseeable; (2) "predeprivation process [must] be impossible, making any additional safeguard useless"; and (3) the state actor's "conduct must have been 'unauthorized' in the sense that it was not within the officials' express or implied authority." *Charbonnet v. Lee*, 951 F.2d 638, 642 (5th Cir. 1992) (citing *Zinermon*, 494 U.S. at 136–38); *Caine v. Hardy*, 943 F.2d 1406, 1413 (5th Cir. 1991) (en banc).

> ### 1. Grizzle cannot state a cognizable procedural due process claim based on Defendants' alleged taking of his clothing, shoes, rosary, and books.

Grizzle attempts to place the alleged taking of his clothing/shoes, rosary, and books outside the confines of the *Parratt/Hudson* doctrine by baldly asserting that the taking was neither unauthorized nor random and was conducted pursuant to state policy. *See* Compl. 10–11 (asserting Defendants personally told Grizzle they took his property because it violated policy), 13. Grizzle's other allegations, however, contradict his conclusory assertion. First, Grizzle indicates that Defendants confiscated all of his property because Grizzle "persisted in refusing to come out of [his] cell." *Id.* at 10. On the other hand, Grizzle contends that Defendants are "lazy," and they

---

[11] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).

permitted another inmate to pack his property, who took "what he wanted." Questionnaire 6, 8 (attributing the disappearance of his clothing/shoes and books to Defendants' apathy). Grizzle does not allege that Defendants gave away his items in accordance with a TDCJ policy. *Id.* at 9. Both of these explanations demonstrate that Defendants did not seize the items *pursuant to* state policy.[12] *See id.* at 8 (positing that Defendants used the policy to justify the taking after the fact "thinking that all inmates are stupid and will accept it at that").

Regardless of Defendants' alleged motivation, Grizzle insists that he possessed the items—clothing/shoes, rosary, and books—in accordance with the rules and that Defendants had no valid basis to confiscate them. *See id.* at 2, 7–8 (disagreeing that his books did not have his name and TDCJ identification number in them, as required by the offender rules), 3, 5–6 (maintaining that his clothing/shoes were not altered in violation of TDCJ rules), 3, 6–7 (alleging that he had the appropriate paperwork to possess his rosary but Defendants confiscated it without "even attempt[ing] to examine the papers"). Grizzle does not challenge the state procedures themselves, nor does he allege Defendants' acts were authorized by those procedures. If Grizzle's allegations are true, Defendants did not seize his property pursuant to established policy but instead took the items *in contravention of* those policies.

Each of the preconditions identified in *Zinermon* are present here. First, Defendants' purported deprivation was unpredictable. The state's policies did not authorize, nor could the state have anticipated, Defendants' purported taking of Grizzle's property despite the property's ostensible compliance with the rules (e.g., name and identification number on the books, appropriate paperwork for the rosary, and unaltered clothing/shoes). *See, e.g.*, *Gross*, 576 F. App'x

---

[12] Based on Grizzle's second scenario, Defendants were not personally involved in the actual taking of the property. Instead, another inmate misappropriated the items. To the extent an inmate elected to take Grizzle's property instead of packing it as directed by Defendants, Grizzle cannot state a cognizable § 1983 claim because Grizzle pleads no facts indicating the inmate was acting under color of state law. *See supra* Section II.F.

at 320 (affirming district court's application of doctrine to detainee's property deprivation claim, where "the conduct alleged describe[d] the state actors' unforeseeable failure to abide by procedure—the defendants' arbitrary, unreasonable abuse of power"); *Caine*, 943 F.2d at 1413 (concluding deprivation was not foreseeable where plaintiff's "pleadings d[id] not suggest that the" institution's regulations were "infirm" but that "the regulations were *violated*, purportedly at every stage, by the dozen or so state actors responsible for enforcing them"); *Gray v. Webb*, No. 5:20cv121, 2022 WL 4459856, at *6 (E.D. Tex. Aug. 9, 2022) ("Plaintiff asserts the taking and retention of his property was done improperly and in violation of regulations, rendering it 'random and unauthorized' within the meaning of *Parratt* and *Hudson*."), *R. & R. adopted by* 2022 WL 4449313 (E.D. Tex. Sept. 23, 2022); *cf. Brooks v. George Cnty.*, 84 F.3d 157, 165 (5th Cir. 1996) (noting that "where employees are acting in accord with customary procedures, the 'random and unauthorized' element required for the application of the *Parratt/Hudson* doctrine is simply not met" (citation omitted)).

Second, Grizzle does not plead any facts showing that TDCJ's policies (to which he only generally refers) were "impotent to counter" Defendants' purported taking. *Caine*, 943 F.2d at 1413; *see Rogers v. Rupert*, No. 6:11cv366, 2011 WL 6969692, at *2 (E.D. Tex. Oct. 28, 2011) (applying *Hudson/ Parratt* doctrine where plaintiff believed prison officers may have "allowed [another] inmate to steal" his property because that "would be a random and unauthorized deprivation, rendering pre-deprivation process impossible"), *R. & R. adopted by* 2012 WL 73190 (E.D. Tex. Jan. 10, 2012). To the contrary, Grizzle raises no challenge to the policies themselves. *See* Compl. 10–13; Questionnaire 5–8. Instead, Grizzle alleges that Defendants used the policies to justify the seizure after the fact. *See* Compl. 10; Questionnaire 5–8.

Finally, Grizzle has not pointed to any provision in the policies giving Defendants the authority to confiscate property for improper reasons or without justification. This leads the Court to the conclusion that Defendants' alleged action was unauthorized. *See, e.g., Leggett v. Comer*, 280 F. App'x 333, 335 (5th Cir. 2008) (per curiam) (affirming district court's application of *Parratt/Hudson* doctrine to prisoner's due process claim where prisoner did not point to a "state law or prison directive requiring [d]efendants to deprive him of his" property but instead alleged defendants "intentionally failed to comport with prison policy to inventory and secure his property");[13] *cf. Schwarzer v. Wainwright*, 810 F. App'x 358, 359 (5th Cir. 2020) (per curiam) (holding district court erred in dismissing prisoner's due process claim, where he alleged that "prison policies allow correctional officers to take the property of inmates without cause").

The conclusion that Defendants' conduct was random and unauthorized because it was not authorized by established policy coincides with decisions in this circuit. Specifically, the Fifth Circuit has held that where a plaintiff does not challenge the lawfulness of a policy but instead asserts that defendants failed to act in accordance with the policy, the plaintiff's due process claim is barred by the *Parratt/Hudson* doctrine. *See, e.g., Carmona*, 1995 WL 581807, at *1; *Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir. 1986). For example, in *Carmona* the prisoner "characterized his claim as a due process deprivation," alleging that some of his property disappeared after defendants searched his cell. 1995 WL 581807, at *1. The district court held

---

[13] In a recent unpublished opinion, the Fifth Circuit found *Leggett* inconsistent with its holding in *Allen. Coomer v. Roth*, No. 21-10182, 2022 WL 73045, at *2 n.4 (5th Cir. Jan. 7, 2022). The court further stated, however, that *Allen* is binding (*id.*), wherein the prisoner not only raised a due process claim based on the confiscation of his property, but also challenged as "unconstitutionally vague" the prison regulation under which the defendant took his property. 388 F.3d at 148–49. Consistently, the Fifth Circuit in *Leggett* seems to suggest that because the prisoner failed to challenge a prison policy, he could not assert a viable due process claim. *See* 280 F. App'x at 335. Regardless of any apparent conflict between *Leggett* and *Allen*, the Court finds, as discussed herein, that Grizzle's failure to challenge the prison rules related to the confiscation of his clothing/shoes, rosary, and books results in a meritless claim. That is, Grizzle's allegations align with cases like *Leggett, Carmona*, and *Holloway* because he does not challenge the policies but instead complains of the individual Defendants' conduct in violating the policies.

that the prisoner's property deprivation claim "was, at most, a random act"—not a due process violation—and the Fifth Circuit affirmed. *Id.* In affirming, the court observed that the prisoner did "not challenge the procedure for searching prisoners' cells"; he "simply argue[d] that [defendants] took his property and then did not follow established prison procedures." *Id.*

Similarly, the plaintiffs in *Holloway* alleged that a state court judge conspired to deprive them of their property. 784 F.3d at 1291. The district court "held that the *Parratt/Hudson* rule barred the plaintiffs' action" because the deprivation was "a random and unauthorized act by a state employee." *Id.* On appeal, the plaintiffs "argue[d] that, unlike the situation in *Parratt* and *Hudson,* the deprivation . . . was pursuant to an established state procedure, rather than simply the result of a random and unauthorized act." *Id.* The Fifth Circuit rejected plaintiffs' contention that *Parratt/Hudson* did not apply because "plaintiffs d[id] not challenge the validity of the established procedure, . . . but the alleged illegal and unauthorized acts of [the state court judge]." *Id.* at 1292. The court explained "that the due process challenge must be to the established state procedure itself and not to a random and unauthorized act of a state employee." *Id.* at 1293.

The *Holloway* plaintiffs attempted to rely on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982) in asserting that the *Parratt/Hudson* doctrine did not apply. *Id.* at 1291–92. The Fifth Circuit, however, found *Logan* distinguishable because the plaintiffs were not challenging a state procedure. *Id.* at 1292. The court explained that "[w]hile in *Logan* it was possible for the state to remedy the defective procedure so as to prevent the challenged deprivation of property, in the [*Holloway*] case . . . there [wa]s no practical way for Texas to prevent a biased or corrupt judge from depriving a litigant of property in the first instance." *Id.*

In sum, the Fifth Circuit has consistently held that a plaintiff's ability to assert a viable due process claim turns in part on whether the plaintiff challenges the state policy that supplied the

basis for the deprivation. *See, e.g.*, *Washington v. Collier*, 747 F. App'x 221, 222–23 (5th Cir. 2018) (per curiam) (rejecting prisoner's contention that the *Parratt/Hudson* doctrine did not preclude his property deprivation claim, where prisoner did not identify an established policy on which the taking was based); *Leggett*, 280 F. App'x at 335; *Allen*, 388 F.3d at 149; *Carmona*, 1995 WL 581807, at *1; *see also Hurd v. Barnette*, No. 6:15cv734, 2017 WL 9289643, at *7 (E.D. Tex. Jan. 24, 2017) (citing *Holloway* in support of the observation that a defendant's acts are random and unauthorized where the plaintiff is not challenging the established procedure but merely the defendant's alleged failure to follow the procedure). This is because "[t]he doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)." *Brooks*, 84 F.3d at 165; *see Easter House v. Felder*, 910 F.2d 1387, 1404 (7th Cir. 1990) (en banc) (Section 1983 "should not be employed to remedy deprivations which occur at the hands of a state employee who is acting in direct contravention of the state's established policies and procedures which have been designed to guarantee the very protections which the *employee* now has chosen to ignore."). As a result, Grizzle's claims based on the taking of his clothing/shoes, rosary, and books fall squarely within the *Parratt/Hudson* doctrine. *See Washington v. Flenory*, No. 2:19-CV-154-Z-BR, 2022 WL 3702013, at *2 (N.D. Tex. Aug. 26, 2022) (applying *Parratt/Hudson* doctrine where plaintiff did "not complain of the validity of the TDCJ regulations themselves" but instead alleged "that [d]efendants intentionally misused or misapplied a policy to wrongfully seize his authorized property," which is not "a due process violation").

Applying the doctrine to the circumstances presented herein, Grizzle cannot establish a cognizable procedural due process claim unless the state fails to provide an adequate post-deprivation remedy. *Carmona*, 1995 WL 581807, at *1. Texas substantive law provides an

adequate post-deprivation remedy for persons asserting claims such as those raised herein by Grizzle—pursuing a conversion claim in state court. *See, e.g.*, *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Thus, Grizzle cannot maintain a cognizable federal cause of action. *See DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (affirming dismissal of prisoner's claim that defendant seized his religious materials in violation of TDCJ policy because "Texas's tort of conversion provides an adequate post-deprivation remedy for prisoners claiming loss of property without due process"). As discussed above, Grizzle's conclusory assertion that Defendants' purported post hoc rationalization stating they acted in accordance with state policy does not alter this conclusion. The undersigned therefore recommends the district judge dismiss Grizzle's due process claim based on Defendants' alleged confiscation of his clothing/shoes, rosary, and books.

   2. *Grizzle has pleaded facts giving rise to a cognizable due process claim as to Defendants' alleged seizure of his pictures and magazines.*

   Unlike his other property, Grizzle contends that Defendants confiscated his pictures of women and magazines because they were contraband under BP 03.91. Compl. 10–11. That is, liberally construing his allegations, Grizzle claims that the seizure of his photos and magazines was authorized by BP 03.91. *See* Compl. 10–12; Questionnaire 5, 12. The undersigned finds that at this stage of the proceedings, Grizzle has pleaded sufficient facts to survive screening as to his due process claim based on the confiscation of these items. *See, e.g.*, *Coomer*, 2022 WL 73045, at *2 (determining *Parratt*/*Hudson* doctrine did not apply to prisoner's claim because state delegated authority to defendant to enforce policy); *Calhoun v. Collier*, 858 F. App'x 165, 165 (5th Cir. 2021) (per curiam) (vacating district court's dismissal of prisoner's property deprivation claim where "the allegations in [prisoner's] complaint indicate[d] that the deprivation may have resulted from established state procedure or policy"); *Grizzle v. Elliott*, 849 F. App'x 128, 129 (5th Cir. 2021) (per curiam) ("[a]ffording Grizzle's pro se pleadings liberal construction" and holding

that the factual allegations "indicate[d] that the deprivation may have resulted from established state procedure or policy" such that "a § 1983 claim could be appropriate"); *Schwarzer*, 810 F. App'x at 359 (holding district court erred in dismissing prisoner's due process claim, where he alleged that "prison policies allow correctional officers to take the property of inmates without cause"); *Allen*, 388 F.3d at 149 ("Conduct is not random and unauthorized for purposes of the *Parratt/Hudson* doctrine if the state delegated to the defendants the power and authority to effect the very deprivation complained of." (internal quotation marks, brackets, and citation omitted)).

**H. Grizzle's First Amendment claim based on the confiscation of his religious items, including his rosary and books, does not survive screening.**

Grizzle practices the Catholic religion. *See* Questionnaire 17. He alleges that Defendants Robles, Olvera, and Garcia—at Defendant McIntire's order—seized his rosary and religious books (including his Catholic Bible, Catholic concordance, and "a Virgin Mary book") thereby violating his First Amendment religious rights.[14] *See* Compl. 10–11, 13–14; Questionnaire 14, 16. Grizzle asserts that the rosary is important to the practice of his religion because he "pray[s] the rosary several times a day." Questionnaire 16. The books, Grizzle avers, are significant because he "like[s] to read[,] learn and self educate [himself]" about his religion. *Id.*

Grizzle maintains that the purported confiscation burdened the exercise of his Catholic faith because he was not "able to study [his] religion, read [his] Bible, study the saints, [and] observe the religious holidays around that time." Questionnaire 14. Nevertheless, Grizzle acknowledges that he was able to pray on occasion "by borrowing a rosary." *Id.* at 16.

---

[14] Grizzle does not specify whether he intends to bring a claim under the Free Exercise Clause, the Establishment Clause, or both. *See* Compl. 10–11, 13–14; Questionnaire 14, 16. Based on his allegations, however, the Court understands Grizzle as solely raising a Free Exercise claim. *See* Compl. 10–11, 13–14; Questionnaire 14, 16; *cf. Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").

25

A prisoner's First Amendment rights are violated when he is not afforded "reasonable opportunity" to exercise his religious beliefs. *Davis v. Davis*, 826 F.3d 258, 265 (5th Cir. 2016) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)); *Adkins*, 393 F.3d at 564 (explaining that "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith" (citation omitted)). "Whether a prison regulation impermissibly encroaches upon a prisoner's First Amendment rights depends upon whether it is 'reasonably related to legitimate penological interests.'" *Butts*, 877 F.3d at 584 (quoting *Mayfield*, 529 F.3d at 607); *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351–52 (1987) (holding that prison officials are not required to sacrifice legitimate penological objectives to accommodate inmates' religious practices). Courts rely on the four-factor *Turner* test described above in determining the reasonableness of a prison regulation that allegedly impinges on a prisoner's religious rights. *See Adkins*, 393 F.3d at 564 (quoting *Turner*, 482 U.S. at 89–90).

Significantly, Grizzle previously testified under oath that he was without his rosary and Bible only temporarily. *Grizzle v. McIntire*, No. 5:22-CV-017-BQ, 2022 WL 17818101, at *22 (N.D. Tex. Oct. 31, 2022) (citing specific portions of Grizzle's *Spears* hearing testimony—which he provided under oath—related to the purported confiscation of his Bible and rosary). Specifically, Grizzle stated that the prison chaplain replaced his rosary and Bible approximately one week after Defendants allegedly confiscated the items. *See id.*

As the Court previously held, this alleged temporary deprivation fails to implicate the Constitution. *See id.* at *23. "An isolated incident or *de minimis* limitation that temporarily inhibits a prisoner's exercise of religion is not of constitutional dimension." *Pagonis v. Raines*, No. 4:17-CV-01-DC-DF, 2018 WL 9240919, at *3 (W.D. Tex. Aug. 10, 2018) (citing *Walsh v.*

*La. High School Athletic Ass'n*, 616 F.2d 152, 158 (5th Cir. 1980), *cert. denied*, 449 U.S. 1124 (1981)), *R. & R. adopted by* 2018 WL 9240916 (W.D. Tex. Sept. 10, 2018). The one-time confiscation of Grizzle's Bible and rosary for a short one-week period is *de minimis*. *See Morgan v. Patterson*, 772 F. App'x 117, 119 (5th Cir. 2019) (per curiam) ("[Prisoner] alleged only isolated incidents resulting in the denial of kosher meals, which are insufficient to state a First Amendment claim."); *Thompson v. Quarterman*, No. V-01-01, 2007 WL 2900564, at \*2 (S.D. Tex. Sept. 30, 2007) ("An isolated denial, such as having to miss a single religious service, does not constitute a substantial burden on a prisoner's right to practice his religion."); *Castillo v. Blanco*, No. 07-215, 2007 WL 2264285, \*12 (E.D. La. Aug. 1, 2007) (finding that requiring an inmate to work on one occasion on a Saturday, which the inmate observes as the Sabbath, was a *de minimis* burden on the free exercise clause and not of constitutional dimension).

As to Grizzle's claim that Defendants took his religious books (excluding the Bible), he has similarly failed to plead facts implicating the Constitution. Grizzle does not contend that he uses the books to practice his religion or that the deprivation otherwise denied him a "reasonable opportunity" to practice Catholicism. *See* Compl. 10–14; Questionnaire 14–16. Indeed, Grizzle states that he "like[s] to read[,] learn and self educate" on Catholicism—i.e., that he uses the books to educate himself about the religion—not that the books are necessary to the *practice* of his religion. Questionnaire 16. Moreover, Grizzle generally acknowledges that he retained the ability to pray without the religious texts. *See* Questionnaire 16.

Grizzle has failed to show that Defendants' purported deprivation of these religious materials infringed on the practice of his religion. The undersigned therefore recommends that the district judge dismiss his claim. *See Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 831 (8th Cir. 2009) (explaining that before applying the *Turner* factors, a court must consider "whether the

challenged governmental action infringes upon a sincerely held religious belief"); *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 861 (5th Cir. 2004) ("The pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith."); *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir. 1992) (explaining that under the second *Turner* factor, a regulation that does not "entirely stifle[] the prisoner's religious expression" may be constitutional); *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) ("The Constitution requires that 'reasonable opportunities must be afforded to all prisoners to exercise . . . religious freedom.'" (quoting *Cruz*, 405 U.S. at 322 n.2)); *see also Rountree v. Clarke*, No. 7:11CV00572, 2015 WL 1021286, at *7 (W.D. Va. Mar. 9, 2015) (concluding defendants were entitled to summary judgment on plaintiff's First Amendment and RLUIPA claims that defendants confiscated her religious books, where plaintiff did not allege "that the confiscation of these particular religious books substantially burdened her religion" (internal quotation marks omitted)).

## I.  Grizzle cannot state a claim under RLUIPA or RFRA because the relief he seeks is unavailable.

Grizzle alleges Defendants Robles, Olvera, Garcia, and McIntire violated his rights under RLUIPA and RFRA when they purportedly confiscated his religious items. Compl. 14. Grizzle has not stated a viable claim against Defendants under either statute.

Initially, the Court observes that RFRA only applies to federal government actors. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 289 (5th Cir. 2012) (citing *City of Boerne v. Flores*, 521 U.S. 507, 532–36 (1997); *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 258–59 (5th Cir. 2010). Grizzle does not plead any facts suggesting Defendants are federal actors. *See* Compl. 1–15. On this basis alone the Court should dismiss Grizzle's RFRA claim. *See, e.g., Witherspoon v. Waybourn*, No. 4:20-cv-1150-P, 2021 WL

2635917, at *10 (N.D. Tex. June 25, 2021) (granting defendant's motion to dismiss prisoner's RFRA claim because defendant was "not a federal actor and, therefore, RFRA [did] not apply"); *Guillory v. Jones Cnty. Jail*, No. 2:14CV157–KS–MTP, 2014 WL 5847536, at *2 (S.D. Miss. Nov. 12, 2014) (concluding prisoner failed to state a RFRA claim against sheriff, who was a state actor). Construing Grizzle's claim as one under the Texas Religious Freedom Restoration Act (TRFRA) fares no better.

TRFRA prohibits a governmental regulation from substantially burdening a person's religious free exercise unless the regulation "is in furtherance of a compelling governmental interest" and employs the least restrictive means of furthering that interest. TEX. CIV. PRAC. & REM. CODE ANN. § 110.003(a)–(b) (West 2019). Similarly, "RLUIPA requires that prison officials refrain from (1) substantially burdening an inmate's free exercise of his religion unless, when strictly scrutinized, (2) the burden 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering that compelling interest.'" *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009) (quoting 42 U.S.C. § 2000cc–1(a) (2006)).

Under RLUIPA and TRFRA, however, a plaintiff may not pursue a claim against a defendant in his individual capacity, nor may he successfully bring an official capacity claim against a defendant for money damages because such a claim is barred under the Eleventh Amendment. TEX. CIV. PRAC. & REM. CODE ANN. § 110.005(d) ("A person may not bring an action for damages or declaratory or injunctive relief against an individual . . . ."); *Sossamon*, 560 F.3d at 331 (holding that "RLUIPA does not create a cause of action against defendants in their individual capacities" and any award of damages against defendants in their official capacities "is barred by Texas's sovereign immunity"); *see, e.g.*, *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (per curiam) ("An inmate is not entitled to monetary damages under RLUIPA for

a suit brought against a correctional officer in his individual capacity."); *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011) (per curiam) ("RLUIPA does not create a cause of action for damages against 'Texas and the defendants in their official capacities,' nor does it create a 'cause of action against defendants in their individual capacities.'" (quoting *Sossamon*, 560 F.3d at 331 & n.51) (footnote omitted)); *Wagner v. Tex. Dep't of Crim. Just.*, No. 1:15-CV-177-BL, 2018 WL 7133701, at *2 (N.D. Tex. Oct. 16, 2018) (recommending dismissal of prisoner's TRFRA claim against defendant in his official capacity for money damages because such claim is barred by the Eleventh Amendment); *McKennie v. Tex. Dep't of Crim. Just.*, Case No. A-09-CA-906-LY, 2011 WL 13237553, at *3 (W.D. Tex. May 24, 2011) (dismissing prisoner's TRFRA claim against defendant in official capacity where "the State of Texas [was] the real party in interest, and the Eleventh Amendment bar[red] the Court from exercising subject-matter jurisdiction over [prisoner's] TRFRA claims").

Because Grizzle cannot pursue a RLUIPA or TRFRA claim against Defendants for money damages in their individual or official capacities, the undersigned recommends that the district judge dismiss such claims.[15]

## III.    Recommendation

For these reasons, the undersigned recommends that the United States District Judge order the filing of an answer or other pleading as to Grizzle's First Amendment and procedural due process claims against Defendants Rene Robles, Clementene Olvera, Ruben Garcia, and Bryson McIntire based on their purported confiscation of Grizzle's pictures of women and magazines. As to the remaining claims, the undersigned recommends that the United States District Judge dismiss

---

[15] The only other form of relief Grizzle seeks is a declaratory judgment. Compl. 14. But as already discussed, Grizzle has failed to assert a cognizable claim for declaratory relief. *See supra* Section II.B.

them with prejudice, excepting Grizzle's claims for a declaratory judgment, which should be dismissed without prejudice.

## IV.     <u>Right to Object</u>

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: April 28, 2023.

_____

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**